IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES SMITH, # 152740, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15cv225-ECM |
| | ) | [WO] |
| CHERYL PRICE, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This case is before the court on a *pro se* petition for writ of habeas corpus under

28 U.S.C. § 2254 filed by Alabama inmate Charles Smith ("Smith"). Doc. No. 1.[1]  Smith

challenges his conviction for second-degree escape obtained in a 2013 jury trial in the

Circuit Court of Russell County.

### I.   BACKGROUND

On January 15, 2013, a Russell County jury found Smith guilty of one count of

second-degree escape, in violation of § 13A-10-32, Ala. Code 1975.  Doc. No. 10-1 at 7.

That same date, the trial court sentenced Smith as a habitual felony offender to 99 years in

prison.  *Id*. at 8–9.

Smith appealed, asserting that (1) he was denied his right of counsel because the

trial court did not conduct a colloquy under *Faretta v. California,* 422 U.S. 806 (1975),

---

[1] References to "Doc. No(s)." are to the document numbers of the pleadings, motions, and other materials
in the court file, as compiled and designated on the docket sheet by the Clerk of Court.  Pinpoint citations
are to the page of the electronically filed document in the court's CM/ECF filing system, which may not
correspond to pagination on the "hard copy" of the document presented for filing.

warning him of the perils of self-representation after he stated he wanted to represent himself; and (2) the trial court erred in failing to reinstate standby counsel as lead counsel during closing argument after he revoked his waiver of his right to counsel.  *See* Doc. No. 10-3.  On August 23, 2013, the Alabama Court of Criminal Appeals affirmed Smith's conviction and sentence by unpublished memorandum opinion.  Doc. No. 10-5.  Smith did not apply for rehearing with the Alabama Court of Criminal Appeals or seek certiorari review in the Alabama Supreme Court.  On September 11, 2013, the Alabama Court of Criminal Appeals issued a certificate of judgment.  Doc. No. 10-7.

On March 14, 2014, Smith filed a *pro se* Rule 32 petition[2] with the trial court presenting a claim that the trial court lacked jurisdiction to render the judgment or to impose his sentence because it failed to inform him under Rule 6.1(b) of the Alabama Rules of Criminal Procedure that he had the right to withdraw his waiver of the right to counsel at any time during the proceedings.  Doc. No. 10-8 at 9–26.  On July 14, 2014, the trial court entered an order summarily denying Smith's Rule 32 petition, finding that his claim was precluded because it was raised and rejected by the appellate court on direct appeal.  *See* Ala.R.Crim.P. 32.2(a)(4) (providing that a Rule 32 petitioner will not be given relief "based upon any ground . . . [w]hich was raised or addressed on appeal").  Doc. No. 10-8 at 32.

Smith appealed, reasserting the claim from his Rule 32 petition.  Doc. No. 10-9.  By memorandum opinion issued on November 7, 2014, the Alabama Court of Criminal

---

[2] Rule 32 of the Alabama Rules of Criminal Procedure.

Appeals affirmed the trial court's denial of Smith Rule 32 petition.   Doc. No. 10-11.

Smith's application for rehearing was overruled (Doc. No. 10-6), after which he filed a

petition for writ of certiorari in the Alabama Supreme Court (Doc. Nos. 10-12–10-14).  On

March 13, 2015, the Alabama Supreme Court denied Smith's petition for writ of certiorari.

Doc. No. 10-15.  A certificate of judgment issued on that same date.  *Id.*

On April 9, 2015, Smith initiated this federal habeas action by filing a § 2254

petition asserting the following claims:

> 1. The trial court committed reversible error by failing to conduct a colloquy under *Faretta v. California*, 422 U.S. 806 (1975), warning him of the perils of self-representation before allowing him to proceed *pro se* at trial and, further, by failing to inform him under Ala.R.Crim.P. 6.1(b) that he had the right to withdraw his waiver of his right to counsel at any time during the proceedings.
>
> 2. The trial court erred in failing to reinstate standby counsel as lead counsel during closing argument after he revoked his waiver of his right to counsel.

Doc. No. 1 at 6; Doc. No. 3 at 15–32.

As discussed below, Smith's claims are procedurally defaulted and are therefore not

subject to federal habeas review.  As discussed alternatively below, even if Smith's claims

are not defaulted, they do not entitle him to federal habeas relief because the Alabama

Court of Criminal Appeals' merits rulings denying relief on the claims were not contrary

to or an unreasonable application of clearly established federal law, and they were not

based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceeding.  Consequently, it is the recommendation of the Magistrate Judge

that Smith's § 2254 petition be denied without an evidentiary hearing and this case be dismissed with prejudice.

## II.   DISCUSSION

### A.   Procedural Default

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).  Before a § 2254 petitioner may obtain federal habeas corpus review, he must "exhaust" his federal claims by raising them in the appropriate court, giving the state courts an opportunity to decide the merits of the constitutional issue raised.  *See* 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Walker*, 533 U.S. 167, 178–79 (2001).  To exhaust a claim fully, a petitioner must "invok[e] one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In Alabama, a complete round of the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to that court, and a petition for discretionary review—a petition for a writ of certiorari—filed in the Alabama Supreme Court.  *See Smith v. Jones*, 256 F.3d 1135, 1140–41 (11th Cir. 2001); Ala.R.App.P. 39 & 40   The exhaustion requirement applies to state post-conviction proceedings and to direct appeals.  *See Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003).

Habeas claims not properly exhausted in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules.  *Gray*

*v. Netherland*, 518 U.S. 152, 161–62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).   "[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas."  *Coleman*, 501 U.S. at 735 n.1 (citations omitted); *see Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003).

### 1.  *Smith's Claims Are Procedurally Defaulted.*

In his § 2254 petition, Smith claims that (1) the trial court committed reversible error by failing to conduct a colloquy under *Faretta v. California*, 422 U.S. 806 (1975), warning him of the perils of self-representation before allowing him to proceed *pro se* at trial and, further, by failing to inform him under Ala.R.Crim.P. 6.1(b) that he had the right to withdraw his waiver of his right to counsel at any time during the proceedings; and (2) the trial court erred in failing to reinstate standby counsel as lead counsel during closing argument after he revoked his waiver of his right to counsel.  Smith raised these same claims on direct appeal, where they were decided adversely to him by the Alabama Court of Criminal Appeals.  *See* Doc. No. 10-5.  However, after the Alabama Court of Criminal Appeals issued its August 23, 2013 memorandum opinion, Smith neither applied for rehearing with that court nor sought certiorari review in the Alabama Supreme Court.  Thus, Smith failed to submit his claims through a complete round of Alabama's established appellate review process.

Smith may no longer return to the state courts to exhaust his claims.  The time for him to seek rehearing in the Alabama Court of Criminal Appeals has long since passed, as

has the time for him to seek state certiorari review; and he has no other available remedies. *See* Ala.R.App.P 39 & 40.  Thus, the exhaustion and preclusion rules coalesce into the procedural default of Smith's claim.  *See Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891.

### 2.    *Exceptions to Procedural Default*

A habeas petitioner can overcome a procedural default either through showing cause for the default and resulting prejudice, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or establishing a "fundamental miscarriage of justice," which requires a colorable showing of actual innocence, *Schlup v. Delo*, 513 U.S. 298, 324–27 (1995).[3]  Cause for a procedural default must ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded efforts to comply with the state's procedural rules. *Murray*, 477 U.S. at 488; *United States v. Frady*, 456 U.S. 152, 170 (1982).  Examples of such external impediments include a factual or legal basis for a claim not reasonably available, interference with the defense by government officials, or constitutionally ineffective assistance of counsel.  *Murray,* 477 U.S. at 488.  To establish prejudice, a petitioner must show that the errors worked to his "actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions."  *Id.* at 494 (internal quotations and emphasis omitted).

---

[3] Prisoners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt."  *Schlup,* 513 U.S. at 327.

Smith does not try to assert "cause" excusing the procedural default of his claims. Nor does he argue that the actual-innocence exception provides a gateway for review of his procedurally defaulted claims. Under the circumstances, then, Smith's claims are foreclosed from federal habeas review.

**B.    Standard of Review for Claims Adjudicated on Merits by State Court**

As stated above, Smith's claims are procedurally defaulted and foreclosed from federal habeas review. However, even if Smith had properly exhausted his claims in the state courts, preserving them for federal habeas review, they would not entitle him to habeas relief because the Alabama Court of Criminal Appeals' merits rulings denying relief on the claims were not contrary to or an unreasonable application of clearly established federal law, and they were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief." *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21, 2010). To prevail on a § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 404–05 & 412–13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*, 529 U.S. at 404–06; *Bell v. Cone,* 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 407.

"Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011) (internal citations omitted).

Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citation omitted) (alteration in original). A state court's determination of a factual issue is "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 1.    Trial Court's Failure to Conduct <u>Faretta</u> Inquiry

As noted above, Smith contends that the trial court erred to reversal in failing to conduct a colloquy under *Faretta v. California*, 422 U.S. 806 (1975), warning him of the perils of self-representation before allowing him to proceed *pro se* at trial and also erred by failing to inform him under Ala.R.Crim.P. 6.1(b) that he had the right to withdraw his waiver of his right to counsel at any time during the proceedings.[4] *See* Doc. No. 1 at 6; Doc. No. 3 at 15–29.

### a.    <u>Faretta</u> Inquiry and "Hybrid Representation"

---

[4] Under Ground One on the § 2254 petition form he submits, Smith specifically identifies only the trial court's failure to inform him that he could withdraw his waiver of his right to counsel as a basis for relief. *See* Doc. No. 1 at 6. However, in the brief he submits in support of his petition, Smith presents a more expansive claim, like the one he raised on direct appeal, that he was denied his right of counsel because the trial court failed to conduct a colloquy in compliance with *Faretta* warning him of the perils of self-representation. *See* Doc. No. 3 at 15–29.

*In Faretta v. California*, the United States Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. *See* 422 U.S. at 819 & 833–34. To invoke the right to self-representation, a defendant must "knowingly and intelligently" waive his right to counsel. *Id*. at 835. "The ideal method of assuring a voluntary waiver is for the trial judge to conduct a . . . hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation." *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) (citation omitted). This so called *Faretta* hearing should make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (citation omitted).

On direct appeal, Smith raised his claim about the trial court's failure to conduct a *Faretta* inquiry. *See* Doc. No. 10-3. After a close factual analysis of the record, the Alabama Court of Criminal Appeals concluded that no *Faretta* inquiry was required in Smith's case because Smith received "hybrid representation," where he had the assistance of counsel, attorney David Jones, who actively participated in his representation throughout trial. *See* Doc. No. 10-5.

In *Upshaw v. State*, 992 So. 2d 57 (Ala. Crim. App. 2007), another case where a defendant argued the trial court erred in allowing him to proceed *pro se* without conducting a *Faretta* hearing, the Alabama Court of Criminal Appeals observed:

> [C]ontrary to Upshaw's assertions, our review of the record shows that Upshaw was not allowed to represent himself without the aid of an attorney, but instead was granted a "hybrid" form of representation. "Hybrid representation occurs when an accused represents himself and also has the assistance of appointed counsel in an advisory capacity or in conducting

certain portions of the trial.   *See* 2 W. LaFave & J. Israel, *Criminal Procedure*, § 11.5(f) (1984)." *Lucas v. State*, 645 So. 2d 333, 333–34 n.1 (Ala. Crim. App. 1994).

In *Christianson v. State*, 601 So. 2d 512 (Ala. Crim. App. 1992), overruled on other grounds by *Ex parte Thomas*, 659 So. 2d 3 (Ala. 1994), we held that the failure to conduct the *Faretta* inquiry in a situation involving hybrid representation is not error if the defendant's role was limited. We stated:

> "At trial, the appellant, who was represented by appointed counsel, participated in his own defense.  He asked a question during voir dire of the jury, conducted supplemental cross-examination of two witnesses, and made a closing argument. On appeal, he claims that his participation may have prejudiced the jury against him.  Therefore, he argues, the court should have informed him of the dangers and disadvantages of self-representation pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

> ". . . .

>> "'The constitutional rights to self-representation and representation by counsel are viewed as mutually exclusive, though the trial court may permit hybrid representation, in its discretion, as "a matter of grace."'

> "2 W. LaFave & J. Israel, *Criminal Procedure*, § 11.5(f) at 51–52 (1984) (quoting *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983)).

> "Professor LaFave observes that '[a]llowing hybrid representation without an appropriate *Faretta* inquiry can create constitutional difficulties.' *Id*. at 19 n.48 (1991 Pocket Part).  Those difficulties are presented in a case where the representation is nominally hybrid, but the defendant clearly 'pull[s] the lead oar,' *State v. Howard*, 668 S.W.2d 191, 195 (Mo. App. 1984), or where it is unclear whether the representation is hybrid, or *pro se* assisted by standby counsel, *Parren v. State*, 309 Md. 260, 523 A.2d 597 (1987).  Neither situation was present here.  The record demonstrates both that

counsel was in charge of the litigation with the appellant's consent, and that the appellant's role at trial was limited and supplementary to his attorney's participation.'"

601 So. 2d at 519–20."

*Upshaw*, 992 So. 2d at 58–59.

In concluding that Smith had hybrid representation during his trial and that, therefore, a *Faretta* inquiry was not required, the Alabama Court of Criminal Appeals quoted at length from relevant portions of the transcript:

The record indicates that following jury qualification but before the completion of jury selection, the following occurred:

"THE COURT: All right.   Mr. Smith, it's my understanding you wish to address the Court.

"THE DEFENDANT: Yes, sir.  I would like to have Mr. Jones leave off my case because I feel there's a conflict of interest.  He ain't doing nothing.  I had sent him—he's not representing me in the right way.

"THE COURT: What has he not done that you asked him to do?

"THE DEFENDANT: I asked him—I asked him to look into my charges.  He refused to do that.  Then he come back and misled me on the plea.  I go in there, and that's why I was under the assumption, so I tried to bear with Mr. Jones, but I feel like Mr. Jones, he ain't had my best interest.  I would like to have a new counsel, if it please the Court.

"THE COURT: Well, it doesn't please the Court.  Your motion's denied.  We'll proceed."

(R. 3–4.)  [*See* Doc. No. 10-1 at 93–94.]

After a brief recess, the following occurred:

12

"THE COURT: Mr. Smith, it's my understanding you wish to represent yourself at this point; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: You have the right to do that, so we'll go on record now, and you're wanting to represent yourself; is that correct?

"THE DEFENDANT: Yes, sir,

"THE COURT: I'll appoint Mr. Jones as standby counsel. He can sit at the counsel table with you. If you have a question, you can ask, [sic] him but we'll inform the jury that you are representing yourself. Is that what you want to do? I want to make sure for the record, now.

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. You'll be allowed to address the jury at the appropriate time. I want you to understand, there'll be no outburst or anything like that. Do you understand that?

"THE DEFENDANT: Yes, sir."

(R. 4.) [*See* Doc. No. 10-1 at 94.]

When asked, Smith indicated that he wanted standby counsel to assist him in selecting the jury. After the jury was seated, Smith asked the circuit court for a continuance to allow him time to prepare the case. The circuit court denied Smith's motion. The circuit court explained to the jury that Smith would be representing himself and that he had "standby counsel." (R. 16.) [*See* Doc. No. 10-1 at 95–96.]

The State presented its opening statement and Smith delivered the opening statement on behalf of the defense. The circuit court then recessed for lunch. After the lunch recess, the following occurred outside the presence of the jury:

"THE COURT: Please be seated. Mr. Smith, I want the record to indicate, now, that you realize that anything you say

can be used against you, and the jury can consider it.  Do you understand that?

"THE DEFENDANT: Like what, sir?  I mean—

"THE COURT: Like anything.

"THE DEFENDANT: —negative, negative stuff?

"THE COURT: Anything you say.  The jury can use anything you say, and the State can comment on it in closing. You understand that now?  As it was stated, the matter right now is, there's no evidence in, and I'm going to instruct the jury as to that.  But you do have the right—you understand you have the right to remain silent.  You do understand that.  You understand you have the right to a lawyer, but you have waived.  You can't pick and choose your lawyer.

"THE DEFENDANT: I just asked for another counselor because me and my counselor now, we have a conflict.

"THE COURT: He has done nothing that I've seen improper.

"THE DEFENDANT: Okay.

"THE COURT: I'm not going to—you know, it appears to me what you're trying to do is to drag this out and complicate it and put error in the record and all that.  I don't play those games—

"THE DEFENDANT: I'm not trying to do that, sir.

"THE COURT: —so I'm just telling you all this.  So you do have the right to an attorney.  Mr. Jones will be your attorney if you want to use him.  If not, you have the right to represent yourself.  Anything you testify to, anything you testify, the State has the right to cross-examine you.  You understand that.  The State has the right to comment on anything you say.

"THE DEFENDANT: Yes, sir.

"THE COURT: You understand that?

"THE DEFENDANT: Yes, sir."

(R. 18–19.)  [*See* Doc. No. 10-1 at 108-09.]  The State began its case-in-chief, during which standby counsel announced to the court that there were no objections to the admission of several State exhibits.  Standby counsel also informed the circuit court that the defense had no questions for three of the four State witnesses.  After the State rested, standby counsel made a motion for a judgment of acquittal and he objected to the circuit court's decision to not charge the jury on escape in the third degree.  The following exchange then occurred:

"THE DEFENDANT: Sir, my understanding, due process [sic] required for a lesser included, for you to charge the jury for a lesser included offense if there's a reasonable theory.

"THE COURT: Due process only requires that if there's evidence of that, and there's no evidence of that.

"THE DEFENDANT: I haven't said my side first. You've just heard one side.

"THE COURT: I'm just telling you, at this juncture. That's what I initially said when I started out.

"THE DEFENDANT: And I want to—

"THE COURT: If you want to call witnesses or give any evidence—

"THE DEFENDANT: Yeah. That's what I'm trying to do, but you—you block all that.

"THE COURT: No, sir, I haven't blocked anything.

"THE DEFENDANT: You haven't gave me—you denied.

"THE COURT: If you choose to testify, you have the right to testify.

"THE DEFENDANT: I'm saying you denied me counsel, and you denied me witness.

"THE COURT: No, sir, I haven't denied you [counsel]. In fact, I appointed counsel. You're the one that—

"THE DEFENDANT: I said I didn't want him representing me because I felt like it's a—

"THE COURT: Well, you don't get to choose. That's not the way the system works.

"THE DEFENDANT: —conflict of interest between me and my lawyer.

"THE COURT: That's not the way the system works. If you're going to get appointed counsel, you take the counsel we appoint. And unless and until I'm convinced that counsel's not doing his job, you keep that counsel. And I'm not convinced that counsel is—

"THE DEFENDANT: And I asked you for more time for me to prepare myself. You denied that. Ever [sic] time I come up with something, you deny it. I mean, I know I'm the underdog here, and I don't know nothing about the law.

"THE COURT: No, sir. We don't talk about underdogs. You're the criminal defendant here."

(R. 91–93.) [*See* Doc. No. 10-1 at 181–83.]

Smith called himself as a witness and his standby counsel informed the circuit court that Smith did not want him to ask questions; Smith "want[ed] to tell his side of the story." (R. 95.) [*See* Doc. No. 10-1 at 185.] Standby counsel also told the circuit court that he had "advised [Smith that] he's subject to cross-examination" by the prosecutor if he chose to testify. (R. 96.) [*See* Doc. No. 10-1 at 186.] Smith then testified on his own behalf in narrative form and was cross-examined by the prosecutor. After the defense concluded its case-in-chief, standby counsel renewed the motion for judgment of acquittal and the request for a jury instruction on escape in the third degree. Standby counsel also continued to advise Smith as Smith presented the closing argument on behalf of the defense.

Doc. No. 10-5 at 2–7.

Based on the record, the Alabama Court of Criminal Appeals held:

In the instant case, the circuit court informed Smith that it was appointing his trial counsel to serve as "standby counsel" and that his counsel would sit at the table with him and answer questions for Smith. Smith confirmed with the circuit court that the arrangement was what Smith wanted. However, the record indicates that the circuit court actually granted Smith hybrid representation and that defense counsel continued to actively participate in the trial. Defense counsel assisted with jury selection at Smith's request. Defense counsel informed the circuit court several times throughout the State's case-in-chief that there were no objections to the admission of exhibits and that the defense had no questions for three of the four State witnesses. Smith's counsel also made both motions for judgment of acquittal and objected to the circuit court's decision to not charge the jury on escape in the third degree. Additionally, defense counsel advised Smith on the applicable areas of the law and provided him with case law.*

[Note*: During an exchange with the circuit court that occurred while Smith was testifying on direct examination, Smith told that the judge that he had a case that his defense counsel had "pulled up." (R. 99.)] [*See* Doc. No. 10-1 at 189.]

Because Smith received hybrid representation, no *Faretta* inquiry was necessary. He is not, therefore, due any relief as to this claim.

Doc. No. 10-5 at 11.

Besides the facts recounted by the Alabama Court of Criminal Appeals, the record reflects that attorney David Jones was appointed to represent Smith at an initial appearance held on October 26, 2012. Doc. No. 10-1 at 17. Smith was arraigned on November 1, 2012, with Jones present as his counsel. Trial was set for January 14, 2013. Throughout the pretrial proceedings, Jones represented Smith and was served with various notices and motion. *See, e.g., id.* at 18–19. The record reflects that jury qualification, voir dire, and the initiation of jury selection were conducted by Jones. *Id.* at 93. In the middle of jury

selection, Smith first expressed dissatisfaction with Jones and, as stated in the Alabama Court of Criminal Appeals' opinion, requested a new lawyer—a request denied by the trial court. *Id.* at 93–94. As also stated by the Alabama Court of Criminal Appeals, at Smith's request Jones assisted Smith in selecting a jury. *Id.* at 95.

Here, Smith has not rebutted the presumption of correctness given to the state court determination of facts. *See* 28 U.S.C. § 2254(d)(e)(1). The Alabama Court of Criminal Appeals' determination that the degree of active involvement by attorney Jones in performing duties as Smith's counsel during trial reflected that Smith received hybrid representation finds ample support in the record and was *not* "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *See* 28 U.S.C. § 2254(d)(2). Further, applying the "highly deferential" standard for evaluating state court rulings, which demands this court give state court decisions the benefit of the doubt, *see Pinholster*, 536 U.S. at 181, and not substitute its judgment for the state court's, *see Williams*, 529 U.S. at 411, this court finds that the Alabama Court of Criminal Appeals' decision holding that a *Faretta* hearing was not required in Smith's case because he had hybrid representation was *not* "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(2). Consequently, Smith is not entitled to habeas

relief on his claim that the trial court committed reversible error by failing to conduct a

*Faretta* inquiry warning him of the perils of self-representation.[5]

---

[5] Even if Jones's representation of Smith had not risen to the level of hybrid representation, the trial record suggests a knowing and voluntary waiver of the right to counsel by Smith. A *Faretta* hearing is merely "a means to the end" of ensuring that a defendant's waiver is knowing and voluntary. *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) (citation omitted). The lack of a *Faretta* hearing "is not error as a matter of law. If the trial record shows that a defendant knowingly and voluntary elected to represent himself, the *Faretta* standard will be satisfied." *Id.* (citation omitted). The Eleventh Circuit considers eight factors when determining whether a waiver of the right to counsel was knowing and voluntary:

> (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which that counsel aided defendant; (7) mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of the trial.

*Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065–67 (11th Cir. 1986). Some of these factors are neutral in Smith's case, as there is little or no record evidence about them. Smith was 42 or 43 years old at the time of trial. The record is silent on his educational background and his physical and mental health at the time of trial. While there is some indication Smith was taking "medication" while in prison, there is nothing in the record showing what sort of medication he was taking. The record contains no evidence that Smith was mistreated or coerced into waiving his right to counsel. After the trial court told Smith he could represent himself, the court cautioned him that it would not tolerate any "outburst[s] or anything like that" from him during the proceedings. The record indicates Smith understood the nature of the charges. Further, the elements of the offense of second-degree escape, as set out in § 13A-10-32, Ala. Code 1975, are straightforward, requiring a showing that the defendant "escape[d] or attempt[ed] to escape from a penal facility." By his many prior felony convictions, Smith had a substantial criminal history, indicating his significant experience with criminal proceedings. *See Greene v. United States*, 880 F.2d 1299, 1304 (11th Cir. 1989) (remarking that a defendant's "substantial experience with the criminal justice system" is "a factor which weights in favor of a finding of effective waiver"). Through his court-appointed counsel Jones, prior to trial, Smith was informed that he faced a lengthy sentence if convicted because he had six prior felony convictions. Jones had also informed Smith that if he testified at trial, his prior felony convictions would be placed before the jury. Smith had extensive contact with Jones prior to asking to proceed *pro se* (on the day of trial), as Jones represented him from his initial appearance in October 2012 through the day of trial. Most significantly, after being appointed to represent Smith as standby counsel during jury selection, Jones continued to actively assist Smith with legal and tactical advice throughout the proceedings. Indeed, as recounted above in this Recommendation, Jones's assistance of Smith was active enough to have been found by the Alabama Court of Criminal Appeals to constitute "hybrid representation"—with Jones and Smith effectively acting as cocounsel. Finally, there is some indication that Smith's invocation of his right to self-representation was an attempt to manipulate the events of the trial, as Smith did not invoke the right until the day of trial, after jury selection had been initiated and after the trial court informed him it would not grant his request to appoint new counsel at that juncture in the proceedings without a showing that Jones had done something improper or was not doing his job. Smith failed to specify any impropriety

(continued…)

b.    Rule 6.1(b) of the Alabama Rules of Criminal Procedure

Smith also claims that the trial court erred by allowing him to proceed *pro se* at trial without informing him under Ala.R.Crim.P. 6.1(b) that he had the right to withdraw his waiver of his right to counsel at any time during the proceedings.  *See* Doc. No. 1 at 6; Doc. No. 3 at 15–29.

In Smith's appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals considered the claim to have been encompassed in Smith's claim on direct appeal regarding the trial court's failure to conduct a *Faretta* inquiry.  Specifically, the Alabama Court of Criminal Appeals found:

> On appeal, Smith reasserts the claim from his petition.  Assuming, without deciding, that this claim is jurisdictional and not subject to the preclusions in Rule 32.2, it is meritless because Smith raised this claim on appeal from his conviction and sentence and this Court rejected the claim.  Specifically, Smith argued on direct appeal that he had been denied his right to counsel because, he said, the trial court had failed to conduct a colloquy pursuant to *Faretta v. California*, 422 U.S. 806 (1975)—the requirements of which are incorporated into Rule 6.1(b), Ala. R. Crim. P., and include the trial court's informing a defendant that the waiver of the right to counsel may be withdrawn at any stage of the proceedings.  This Court held that because the record established that Smith had not, in fact, waived his right to counsel and represented himself at trial but had been granted hybrid representation by the trial court, it was unnecessary for the trial court to engage in a *Faretta* colloquy and advise Smith of his rights pursuant to Rule 6.1(b), Ala. R. Crim. P.  Therefore, for the reasons stated in our unpublished memorandum in case no. CR-12-0604, Smith's claim is meritless.

Doc. No. 10-11 at 2–3.

---

by Jones, instead alluding vaguely to a "conflict of interest" while asserting, with few details, that Jones had not done what he asked him to do.  Indeed, the trial court told Smith that he appeared to be trying to create error in the proceedings by complaining about Jones's performance as his lawyer and requesting the appointment of new counsel.

Assuming that Smith's claim regarding Ala.R.Crim.P. 6.1(b) was encompassed in his *Faretta* claim on direct appeal, there was no error in the Alabama Court of Criminal Appeals' rejection of Smith's Rule 6.1(b) claim in his Rule 32 appeal.  Further assuming (without finding) that *Faretta* obligates a trial court to inform a defendant that the waiver of the right to counsel may be withdrawn at any stage of the proceedings, as provided in Rule 6.1(b), the trial court in Smith's case was not obligated to inform Smith he could withdraw his waiver of the right to counsel at any time—because Smith received hybrid representation at trial, obviating the requirement that the trial court conduct a *Faretta* inquiry, including a colloquy under which Smith was informed he could withdraw his waiver of the right to counsel.  The state court decision denying Smith relief on this claim was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and it was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  *See* 28 U.S.C. § 2254(d)(1) & (2).  Therefore, this claim does not entitle Smith to federal habeas relief.

Moreover, Smith does not cite to a United States Supreme Court decision holding that a defendant has a constitutional right to be informed that he may withdraw his waiver of counsel.  Indeed, *Faretta* itself does not require district courts to recite a particular script when a defendant asserts his right to self-representation.  Therefore, insofar as Smith's claim relies solely on the trial court's alleged violation of Ala.R.Crim.P. 6.1(b) as a ground for relief, his claim presents no legitimate basis for federal habeas corpus relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding complaints regarding the admission of

evidence under California law did not present grounds for federal habeas relief absent a

showing that admission of this evidence violated due process); *Lewis v. Jeffers*, 497 U.S.

764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state

law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the

writ based on a perceived error of state law).

### 2.     *Failure To Reinstate Standby Counsel*

Smith also claims that the trial court erred in failing to reinstate standby counsel,

attorney Jones, as lead counsel during closing argument after he says he revoked his waiver

of his right to counsel.  *See* Doc. No. 1 at 6; Doc. No. 3 at 29–32.

Smith presented this claim on direct appeal, where it was addressed by the Alabama

Court of Criminal Appeals as follows:

> Smith presented the closing argument for the defense, during which
> numerous objections were sustained by the circuit court.  Following the
> State's sixth objection, Smith asked the prosecutor what he could "talk
> about."  (R. 109.)  [*See* Doc. No. 10-1 at 199.]  Standby counsel [Mr. Jones]
> then interjected and told Smith that he had "to talk about what was presented
> as evidence in the testimony yesterday and any evidence that was admitted."
> (R. 109.)  [*See* Doc. No. 10-1 at 199.]  The following exchange then occurred:
>
>> "THE DEFENDANT: So arguing the fact about a lesser
>> included offense—
>>
>> "[STANDBY COUNSEL]: Is not permissible.
>>
>> "THE DEFENDANT: Can I leave them with this?
>>
>> "[STANDBY COUNSEL]: No.
>>
>> "THE DEFENDANT: I mean, it's concerning escape
>> second.

"[STANDBY COUNSEL]: You can't leave them with that.

"THE DEFENDANT: Can I read it to them?

"[STANDBY COUNSEL]: No.

"THE DEFENDANT: I guess I have no other choice but to ask you to step up here to represent me.  As it's going now, I don't know what to say.  If I say the wrong thing, he's going to object, and then if I don't get any points addressed, they're going to find me guilty and go on back down, so I'm asking you to step forward because you are put on a detainer [sic] to see that I get a fair trial, and they witnesses [sic] you have done nothing to see that I get a fair trial.

"[PROSECUTOR]: Objection.

"THE DEFENDANT: Well, can he step up here?

"THE COURT: We're not going to have any further conversation between you and Mr. Jones.  If you want to address the jury—

"THE DEFENDANT: No, I'm saying that's why you retain him, Judge, so I can get a fair.

"THE COURT: If you interrupt me—don't interrupt me again.  You can address the jury concerning the charge of escape in the second degree, and the evidence that came from the witness stand, and that's it."

(R. 109-11).  [*See* Doc. No. 10-1 at 199–200; Doc. No. 10-2 at 1.]

Smith continued with the closing argument and, after the State made three more objections, which were sustained by the circuit court, the following occurred:

"[PROSECUTOR]: Judge, I objected to this.

"THE COURT: I will sustain the objection.  Now, we have already told you, you couldn't talk about certain things.

> "THE DEFENDANT: Why can't he get up here?
>
> "THE COURT: The 30 years has to do with sentencing.
>
> "THE DEFENDANT: You're the one that sentenced me to 30 years.  You're the one that gave me that.
>
> "THE COURT: Please talk about this case.  The prior cases have nothing to do with this case."

(R. 111–12).  [*See* Doc. No. 10-2 at 1–2.]

Smith never specifically notified the circuit court that he wished to have standby counsel continue the presentation of the closing argument.  His first comment, in which he said that he had "no other choice but to ask you to step up here to represent me" was directed at standby counsel.  (R. 110).  [*See* Doc. No. 10-1 at 199.]  Although Smith did ask the circuit court if his standby counsel could get "up here," he did not inform the court that he wanted to have his standby counsel reappointed as lead counsel as he now argues on appeal.  Therefore, Smith's assertion that the circuit court erred in refusing to reinstate his standby counsel is refuted by the record.

Further, even had Smith unequivocally asked the circuit court for permission to split the responsibility of making a closing argument with his defense counsel, the circuit court would not have abused its discretion in denying the request.  Under Rule 19.1(I), Ala. R. Crim. P. "[t]he parties may make arguments."  However, "[i]n general, the trial court has broad discretion in controlling closing arguments."  *Robinson v. State*, 439 So. 2d 1328, 1330 (Ala. Crim. App. 1983).  The control of closing arguments includes limiting the time allotted to each side.  *See, e.g., Grimsley v. State*, 678 So. 2d 1197 (Ala. Crim. App. 1996).  The circuit court's discretion includes limiting the number of attorneys who present the closing argument for each side.  The effect of hybrid representation is that two attorneys are representing the defendant.  Because a circuit court would not abuse its discretion in limiting the number of attorneys who deliver a closing argument for each side, Smith is due no relief on this claim.

Based on the foregoing, the judgment of the circuit court is affirmed.

Doc. No. 10-5 at 11–14.

Smith does not rebut the presumption of correctness given to the state court finding that he did not expressly ask the trial court to reinstate attorney Jones as lead counsel for purposes of continuing the defense's closing argument.  The Alabama Court of Criminal Appeals' rejection of Smith's claim was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding; nor was it contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1) & (2).  Consequently, Smith is not entitled to habeas relief on this claim.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case be DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner.  The petitioner is DIRECTED to file any objections to this Recommendation on or before **August 27, 2018**.  Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 8th day of August, 2018.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE